# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE No. 9:14-cv-81323-DMM

| | |
|---|---|
| THE CITY OF LOS ANGELES, ACTING THROUGH ITS FIRE AND POLICE PENSION SYSTEM, ACTING BY ORDER OF AND THROUGH ITS BOARD OF FIRE AND POLICE PENSION COMMISSIONERS, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| vs. | |
| BANKRATE, INC., EDWARD J. DIMARIA, KENNETH S. ESTEROW, GOLDMAN SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, RBC CAPITAL MARKETS, LLC, and STEPHENS, INC., | |
| Defendants. | |

## LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 4

III.  THE COURT SHOULD APPROVE THE SETTLEMENT ............................................. 5

    A.    The Standards for Judicial Approval of Class Action Settlements ........................ 5

    B.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations
        Conducted by Informed and Experienced Counsel with the Assistance of
        an Experienced Mediator ................................................................................. 7

    C.    The Settlement Is Fair, Adequate, and Reasonable Under the *Bennett*
        Factors ............................................................................................................ 8

        1.    The Potential Obstacles to Success at Trial Support Approval of
            the Settlement ...................................................................................... 8

        2.    The Settlement Amount Is Well Within the Range of
            Reasonableness ................................................................................... 11

        3.    The Complexity, Expense, and Likely Duration of Continued
            Litigation Support Approval of the Settlement ...................................... 13

        4.    The Reaction of the Settlement Class to the Proposed Settlement to
            Date .................................................................................................... 14

        5.    The Stage of Proceedings Supports Approval of the Settlement ............. 14

    D.    The Recommendation of Experienced Counsel Favors Approval of the
        Settlement ....................................................................................................... 15

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................... 16

V.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS ........ 17

VI.   CONCLUSION ..................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almanzar v. Select Portfolio Servicing, Inc.*,
    2016 U.S. Dist. LEXIS 40457 (S.D. Fla. Mar. 25, 2016)........................................................19

*Amason v. Pantry, Inc.*,
    2014 U.S. Dist. LEXIS 90537 (N.D. Ala. July 3, 2014)........................................................6

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002)........................................................6

*Beavers v. Am. Cast Iron Pipe Co.*,
    164 F. Supp. 2d 1290 (N.D. Ala. 2001)........................................................11

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988)........................................................ *passim*

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ........................................................5, 6, 8, 13

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982)........................................................6

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) ........................................................6

*Braynen, et al. v. Nationstar Mortgage, LLC, et al.*,
    2015 U.S. Dist. LEXIS 151744 (S.D. Fla. Nov. 9, 2015)........................................................6, 19

*Canupp v. Sheldon*,
    2009 U.S. Dist. LEXIS 113488 (M.D. Fla. Nov. 23, 2009) ........................................................6, 7

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ........................................................16

*Cifuentes v. Regions Bank*,
    2014 U.S. Dist. LEXIS 37458 (S.D. Fla. Mar. 20, 2014)........................................................6, 11, 14

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ........................................................6

*In re CP Ships Ltd. Sec. Litig.*,
    578 F.3d 1306 (11th Cir. 2009) ........................................................6

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................10

*Encarnacion v. J.W. Lee, Inc.*,
   2015 U.S. Dist. LEXIS 144858 (S.D. Fla. Oct. 22, 2015)........................................................14

*Garst v. Franklin Life Ins. Co.*,
   1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 28, 1999)......................................8, 11, 12, 14

*Gevaerts v. TD Bank, N.A.*,
   2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)........................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................13

*In re Gilat Satellite Networks, Ltd.*,
   2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007)........................................................9

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................16

*Hubbard v. BankAtlantic Bancorp., Inc.*,
   688 F.3d 713 (11th Cir. 2012) ...............................................................................................10

*In re IBP, Inc. Sec. Litig.*,
   328 F. Supp. 2d 1056 (D.S.D. 2004) ........................................................................................9

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   2012 U.S. Dist. LEXIS 151498 (D. Nev. Oct. 19, 2012) .......................................................12

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) .............................................................................................17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007).........................................................12

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) .............................................................................................10

*In re Microstrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) .....................................................................................16

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ............................................................................................13

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ...............................................................................................19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................12

*In re Oracle Corp. Sec. Litig.*,
 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009) ....................................................10

*Poertner v. The Gillette Co.*,
 2014 U.S. Dist. LEXIS 116616 (M.D. Fla. Aug. 21, 2014) ..................................................5

*Ressler v. Jacobson*,
 822 F. Supp. 1551 (M.D. Fla. 1992)............................................................................ 13, 14

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
 297 F.R.D. 683 (S.D. Fla. 2014).......................................................................7, 8, 17, 19

*In re Smith*,
 926 F.2d 1027 (11th Cir. 1991) ......................................................................................6, 15

*Strube v. Am. Equity Inv. Life Ins. Co.*,
 226 F.R.D. 688 (M.D. Fla. 2005).....................................................................................8, 15

*In re Sunbeam Sec. Litig.*,
 176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...........................................................................11, 15

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................................16

*Thorpe v. Walter Inv. Mgmt. Corp.*,
 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016)................................................12, 13

*In re Tyco Int'l, Ltd.*,
 535 F. Supp. 2d 249 (D.N.H. 2007)...................................................................................10

*In re U.S. Oil & Gas Litig.*,
 967 F.2d 489 (11th Cir. 1992) ............................................................................................6

*Warren v. Tampa*,
 693 F. Supp. 1051 (M.D. Fla. 1988)................................................................................5, 6

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................ 13

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
 2001 WL 686879 (M.D. Fla. May 3, 2001)........................................................................10

**Statutes**

15 U.S.C. § 78u-4 ...........................................................................................................17, 18

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................18, 19

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015 Review and Analysis* ................................................................................. 1

William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §13:45 (5th ed. 2014) ..................................................................................................7

Court-appointed Lead Plaintiff, the City of Los Angeles, Acting through its Fire and Police Pension System, Acting by order of and through its Board of Fire and Police Pension Commissioners ("Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this Memorandum of Law in support of its motion for final approval of (i) the proposed settlement of this securities class action (the "Settlement") and (ii) the proposed plan for allocating the net settlement proceeds to the Settlement Class (the "Plan of Allocation").[1]

## MEMORANDUM OF LAW

## I.     PRELIMINARY STATEMENT

Pursuant to the Stipulation, Lead Plaintiff, through its counsel, has obtained $20,000,000 in cash for the benefit of the Settlement Class, in exchange for the dismissal of all claims brought in this Action and a full release of claims against Bankrate, Inc. ("Bankrate" or the "Company"), Edward J. DiMaria, Kenneth S. Esterow, Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, RBC Capital Markets, LLC, and Stephens, Inc. (collectively, "Defendants") and the Defendant Related Parties.  As described in this Memorandum and in the accompanying Zivitz/Whitman Declaration, the proposed Settlement is a very favorable result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.  Notably, this recovery represents approximately 12.4% of the Settlement Class' likely maximum recoverable aggregate damages as estimated by Lead Plaintiff's damages consultant – a percentage recovery that is more than *four times* greater than recoveries obtained in recent similar securities class actions.[2]

In addition to providing a meaningful monetary recovery for the Settlement Class, the Settlement avoids the substantial risks and expense of continued litigation.  At the time the

---

[1]     All capitalized terms that are not defined in this Memorandum have the same meanings as those set forth in the Stipulation and Agreement of Settlement, dated as of July 18, 2016 (DE 154) (the "Stipulation") and the Declaration of Andrew L. Zivitz and Johnston de F. Whitman, Jr. in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Zivitz/Whitman Declaration" or "Zivitz/Whitman Decl."), submitted with this Memorandum.

[2]     *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, Securities Class Action Settlements: 2015 Review and Analysis, at 9 (Cornerstone Research 2016) (finding median securities settlement in years 2006-2014 recovered 2.8% of estimated damages where damages ranged from $125-$249 million, and only 1.7% of estimated damages in the same range in 2015), a copy of which is attached to the Zivitz/Whitman Declaration as Exhibit B.

Settlement was reached, the Court had already dismissed Lead Plaintiff's claims in their entirety, and Defendants' motion to dismiss Lead Plaintiff's operative, amended complaint − the Second Amended Class Action Complaint ("SAC"), was *sub judice*.   While Lead Plaintiff and its counsel believe that the claims asserted against Defendants are meritorious and would have survived the pending motion to dismiss, they also recognized that, in the absence of a settlement, they faced substantial risks to obtaining a more favorable outcome after continued litigation and trial.

As discussed herein and in the Zivitz/Whitman Declaration, Defendants advanced considerable arguments in opposition to the elements of Lead Plaintiff's claims under §§ 10(b) and 20(a) of the Securities Act of 1934 ("Exchange Act"), as well as its claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") in connection with Bankrate's March 2014 Offering.  Zivitz/Whitman Decl., ¶¶ 43, 64, 90-101.  For example, in their pending motion to dismiss, Defendants contended that none of the statements that Lead Plaintiff challenged in the SAC as materially false and misleading were *materially* misstated, arguing that (i) Lead Plaintiff incorrectly presented the restated revenue and expense amounts from 2Q12 as a percentage of income, rather than as a percentage of total revenues or total assets; (ii) the restated amounts of revenues and expenses for 2Q12 were "tiny" and, therefore, immaterial as a matter of law, particularly in light of the presumption set forth in SEC Staff Accounting Bulletin No. 99 ("SAB No. 99") that misstatements of less than 5% of a given financial metric are immaterial; and (iii) none of the qualitative factors set forth in SAB No. 99 pushed the otherwise immaterial misstatements over the materiality threshold.  *Id*., ¶ 92.  In addition, in opposing scienter, Defendants contended that none of the Defendants had any intent to commit what Defendants characterized as a "miniscule" fraud, and, in particular, pointed to Defendant DiMaria's own transactions in Bankrate common stock as support.  *Id*., ¶ 96.  Defendants also asserted significant defenses to loss causation and damages.  *Id*., ¶¶ 98-101.  Even if Lead Plaintiff survived Defendants' pending motion to dismiss, in light of the foregoing challenges (and others), there was no guarantee that Lead Plaintiff would have succeeded at the class certification stage, on summary judgment or at trial.

Lead Counsel, a firm with extensive experience prosecuting securities class actions and other complex litigation, believes that the Settlement is a favorable result, and in the best interests of the Settlement Class.   Before reaching the Settlement, Lead Counsel had:

(i) conducted a thorough factual investigation into the Settlement Class' claims; (ii) consulted with accounting professionals to develop Lead Plaintiff's allegations pertaining to Defendants' alleged violations of Generally Accepted Accounting Principles ("GAAP"); (iii) drafted two detailed complaints; (iv) briefed two rounds of motions to dismiss filed by multiple Defendants; (v) briefed a motion to partially modify the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (vi) moved for class certification; (vii) worked extensively with loss causation and damages consultants in connection with class certification and mediation; and (viii) engaged in formal mediation with the assistance of Jed Melnick of Weinstein Melnick LLC.  *See generally* Zivitz/Whitman Decl., ¶¶ 26-75.  In addition, pursuant to the parties' agreement in principle to resolve the Action, Bankrate produced discovery related to its accounting practices during the relevant time period, consisting of more than 307,000 pages of documents (including internal e-mails and memoranda and sworn testimony before the United States Securities and Exchange Commission ("SEC")) that Lead Counsel reviewed and analyzed to confirm the reasonableness, fairness, and adequacy of the Settlement.  *Id.*, ¶¶ 79-83.  As a result of these efforts, among others, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of their case when they negotiated the terms of the Settlement.

In addition, Lead Plaintiff − a large, sophisticated institutional investor of the type favored by Congress when passing the PSLRA − has supervised this litigation from the outset and supports approval of the Settlement.  The reaction of the Settlement Class thus far also supports the Settlement.  In accordance with the Court's Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement dated August 24, 2016 (DE 156)[3], the Court-authorized Claims Administrator, JND Legal Administration ("JND"), has mailed over 32,900 copies of the Notice and Proof of Claim Form to potential Settlement Class Members and nominees.[4]  Additionally, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on October 3, 2016.  *Id.*, ¶ 12.  As

---

[3]    This Order was amended on August 25, 2016 (DE 157) to revise the date of the Settlement Fairness Hearing.

[4]    *See* Affidavit of Jennifer M. Keough Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; and (E) Report on Requests for Exclusion Received to Date, dated December 29, 2016, at ¶¶ 3-11 (the "JND Aff.") (attached as Ex. A to the Zivitz/Whitman Declaration).

ordered by the Court and stated in the Notice, requests for exclusion from the Settlement Class and objections to the Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses are due to be received no later than January 17, 2017.  To date, there have been no objections to any aspect of the Settlement, and not one request for exclusion from the Settlement Class has been received.  Zivitz/Whitman Decl., ¶¶ 20, 112; *see also* JND Aff., ¶ 15.[5]

In light of the foregoing and all of the considerations discussed below, Lead Plaintiff and its counsel firmly believe that the $20 million Settlement is fair, reasonable, and adequate, satisfies the standards of Rule 23, and provides a very favorable result for the Settlement Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, grant final certification of the Settlement Class for purposes of effectuating the Settlement,[6] and deem the Plan of Allocation to be a fair and reasonable method for distributing the Net Settlement Fund to the Settlement Class.

## II.    FACTUAL BACKGROUND

The claims in this Action arise from alleged false or misleading statements and omissions by Defendants concerning Bankrate's financial results.  In particular, Lead Plaintiff alleged that the Company manipulated its publicly reported financial results, particularly those in the second quarter of 2012 ("2Q12"), to artificially inflate key metrics in order to meet market expectations.  Zivitz/Whitman Decl., ¶ 6.  Lead Plaintiff further alleged that these misrepresentations and omissions artificially inflated the price of Bankrate common stock during the Settlement Class

---

[5]    Lead Counsel will address any objections and requests for exclusion received after the date of this submission in their reply memorandum to be filed with the Court on or before January 30, 2017.

[6]    By its Preliminary Approval Order, the Court addressed the requirements for class certification set forth in Rules 23(a) and 23(b)(3) and found that Lead Plaintiff had met the requirements for certification of the Settlement Class for settlement purposes and conditionally certified the Settlement Class.  DE 156 at 8.  Since entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's findings and its conditional certification of the Settlement Class.  Zivitz/Whitman Decl., ¶¶ 126-128.  Thus, for all the reasons stated in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and Incorporated Memorandum of Law in Support (DE 155), incorporated herein by reference, and the Court's analysis in the Preliminary Approval Order (DE 156 at 2-8, 11-12), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order and finally certify the Settlement Class for purposes of effectuating the Settlement.

Period, including the price of Bankrate common stock offered and sold in the Company's March 2014 Offering. *Id.*

The initial complaint in this Action was filed in October 2014 (DE 1), and the Action was actively litigated by the parties for two years. Zivitz/Whitman Decl., ¶¶ 26, 33-65. Throughout this time, Defendants vigorously denied and disclaimed, and continue to vigorously deny and disclaim, any wrongdoing or liability whatsoever and all charges and allegations that have been asserted against them. While Defendants' motion to dismiss the SAC was fully briefed and pending, the parties, with the assistance of an experienced mediator, reached an agreement in principle to settle the Action for $20 million. *Id.*, ¶¶ 66-75.[7]

## III.    THE COURT SHOULD APPROVE THE SETTLEMENT

### A.    The Standards for Judicial Approval of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. *Poertner v. The Gillette Co.*, No. 6:12-cv-803-Orl-31DAB, 2014 U.S. Dist. LEXIS 116616, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd*, No. 14-13882, 2015 U.S. App. LEXIS 12318 (11th Cir. July 16, 2015). In approving a settlement under Rule 23(e), the district court must find that it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).[8] To that end, "[t]he Court is required to make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

---

[7]     To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Zivitz/Whitman Declaration for a detailed discussion of the procedural history of the Action and the efforts undertaken by Lead Plaintiff and Lead Counsel on behalf of the Settlement Class. *Id.*, ¶¶ 26-83.

[8]     Citations and internal footnotes are omitted throughout unless otherwise indicated.

*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009) (quoting *Bennett*, 737 F.2d at 986); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). In addition, approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett*, 737 F.2d at 987 (same).

Moreover, there is a "strong judicial policy favoring settlement." *Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, Case No. 14-CV-20726-GOODMAN, 2015 U.S. Dist. LEXIS 151744, at *17-18 (S.D. Fla. Nov. 9, 2015); *see also Bennett*, 737 F.2d at 986; *Amason v. Pantry, Inc.*, No. 7:09-cv-02117-RDP, 2014 U.S. Dist. LEXIS 90537, at *23 (N.D. Ala. July 3, 2014). "[S]ettlements [of class actions] are highly favored in the law and will be upheld whenever possible." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *accord U.S. Oil & Gas*, 967 F.2d at 493; *Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 U.S. Dist. LEXIS 37458, at *11 (S.D. Fla. Mar. 20, 2014). As the court in *U.S. Oil & Gas* noted, "[c]omplex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . ." *U.S. Oil & Gas*, 967 F.2d at 493.

Finally, in evaluating a settlement, the court "is entitled to rely on the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *13 (M.D. Fla. Nov. 23, 2009); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002) (same); *see also Warren*, 693 F. Supp. at 1060 (in approving settlement of class action, "[t]he Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[9] *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

---

[9]     Unless subsequently abrogated or modified, opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

Here, as set forth below, the Settlement warrants the Court's approval.

**B.     The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Conducted by Informed and Experienced Counsel with the Assistance of an Experienced Mediator**

A threshold consideration in evaluating a proposed settlement is whether it is the product of fraud or collusion between the parties.  *See Canupp*, 2009 U.S. Dist. LEXIS 113488, at *26-27 ("In determining . . . fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior . . . on the part of class counsel.").  Courts "presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion."  William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §13:45, at 442 (5th ed. 2014); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("[W]here the case proceeds adversarially, this counsels against a finding of collusion.").

The Settlement satisfies this threshold consideration.  Lead Plaintiff negotiated the Settlement following vigorous and adversarial litigation with the assistance of an experienced mediator on a well-informed basis and with a thorough understanding of the merits and values of the parties' claims and defenses.   As detailed in the Zivitz/Whitman Declaration, while Defendants' motion to dismiss the SAC was pending, Lead Plaintiff and Bankrate agreed to attempt to resolve the Action with the assistance of Jed Melnick, an experienced mediator with an extensive background in mediating securities class actions.  Zivitz/Whitman Decl., ¶ 66.  Prior to the in-person mediation session with Mr. Melnick on April 26, 2016, the parties exchanged detailed confidential mediation statements setting forth their respective positions on the claims asserted, Bankrate's defenses, and damages.  *Id.*, ¶ 67.

The April 2016 in-person mediation was contentious.   Both sides delivered detailed presentations, followed by hard-fought arm's-length discussions regarding the issues. Zivitz/Whitman Decl., ¶¶ 71-73.  Despite mediating for approximately 11 hours, a resolution was not reached at the April 26, 2016 mediation session.  *Id.*, ¶ 73.  The parties, however, continued to engage in settlement discussions through Mr. Melnick for the next two weeks, which ultimately resulted in the parties' acceptance of Mr. Melnick's recommendation to settle the Action for $20 million on May 10, 2016.  *Id.*, ¶ 74.  As a key term of this agreement, Bankrate

agreed to provide confirmatory discovery related to Bankrate's accounting practices during the Settlement Class Period (the "Confirmatory Discovery"). *Id.*, ¶¶ 74, 79. Lead Plaintiff and Lead Counsel concluded based upon their review of the Confirmatory Discovery that the Settlement was fair, reasonable, adequate, and in the best interests of the Settlement Class. *Id.*, ¶¶ 81-82. Following their agreement in principle, the parties engaged in further negotiations regarding the specific terms of the Settlement and entered into the Stipulation on July 18, 2016. *Id.*, ¶¶ 76-78.

The Settlement, therefore, is the product of informed arm's-length negotiations between sophisticated and experienced counsel. *See Saccoccio*, 297 F.R.D. at 692. Lead Counsel has extensive experience in securities fraud class action litigation and a well-deserved reputation for tenaciously prosecuting claims on behalf of shareholders nationwide. *See* Exhibit 3 (firm resume) to the Declaration of Andrew L. Zivitz in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses Filed on Behalf of Kessler Topaz Meltzer & Check, LLP, which is attached as Exhibit C to the Zivitz/Whitman Declaration. As detailed in its firm resume, Lead Counsel has decades of experience in successfully prosecuting some of the most complex class actions. *Id.*

### C. The Settlement Is Fair, Adequate, and Reasonable Under the *Bennett* Factors

#### 1. The Potential Obstacles to Success at Trial Support Approval of the Settlement

The first *Bennett* factor is "the likelihood of success at trial." *Bennett*, 737 F.2d at 986. "In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement is fair, adequate and reasonable, the Court should make only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999); *accord Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005).

Although Lead Plaintiff believes that its claims against Defendants are meritorious and that the investigation and research performed by Lead Counsel support these claims, Lead Plaintiff also acknowledges that it faced significant obstacles to continued litigation and ultimately, success at trial. As an initial matter, Lead Plaintiff's claims had already been dismissed once in their entirety by the Court (albeit without prejudice), and at the time the Settlement was reached, Lead Plaintiff's amended complaint, the SAC, was the subject of a

pending motion to dismiss.  Zivitz/Whitman Decl., ¶¶ 14, 47.  Dismissal of the SAC with prejudice was therefore a very real possibility.

As set forth in the accompanying Zivitz/Whitman Declaration, Lead Plaintiff faced considerable risks to establishing Defendants' liability − particularly with respect to the *materiality* of Defendants' alleged misstatements.  *Id.*, ¶¶ 92-94.  For example, Defendants argued that: (i) Lead Plaintiff incorrectly presented the restated revenue and expense amounts from 2Q12 as a percentage of income, rather than as a percentage of total revenues or total assets; (ii) the restated amounts of revenues and expenses for 2Q12 were "tiny" and, therefore, immaterial as a matter of law, particularly in light of the presumption set forth in SAB No. 99 that misstatements of less than 5% of a given financial metric are immaterial; and (iii) none of the qualitative factors set forth in SAB No. 99 pushed the otherwise immaterial misstatements over the materiality threshold.  Zivitz/Whitman Decl., ¶ 92.  Moreover, while Lead Plaintiff believed that it was proper for the Court to evaluate the quantitative materiality of Bankrate's alleged misstatements of revenues and expenses as a percentage of income (rather than total revenues or total assets, as Defendants argued), it was not clear that the Court would share this view.  *Id.*, ¶ 93.

Lead Plaintiff also faced risks to proving scienter – i.e., that Defendants knew or recklessly disregarded that Bankrate's financial statements, particularly those for 2Q12, were misstated.  *Id.*, ¶ 95.[10]  On this point, Defendants were prepared to mount a strong defense asserting that Lead Plaintiff could not establish that any of the alleged misstatements were made with the requisite intent, and further, that Lead Plaintiff had no direct evidence, and only insufficient circumstantial evidence, suggesting that Defendants' statements were made with severe recklessness.  *Id.*  Moreover, Defendants contended that the evidence would ultimately show that Defendants, particularly Defendant DiMaria, had no intent to commit what Defendants characterized as a "miniscule" fraud that was also inconsistent with his own transactions in Bankrate common stock. *Id.*, ¶ 96.  According to Defendants, while the evidence may show that

---

[10]     *See In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964, at *33 (E.D.N.Y. Sept. 18, 2007) ("Establishing scienter is 'a difficult burden to meet.'"); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004) (approving settlement where "Plaintiffs faced significant obstacles in establishing scienter").

DiMaria was a poor manager who made accounting mistakes, it would not show that any such errors were part of a deliberate scheme to defraud. *Id*.

In addition, Lead Plaintiff faced significant challenges to loss causation and damages. Zivitz/Whitman Decl., ¶¶ 98-101.[11]   To establish these elements, Lead Plaintiff would have to prove that the revelation of the alleged fraud proximately caused the declines in Bankrate's stock price during the Settlement Class Period and that those fraud-related causes could be parsed out from any potential non-fraud related news. *Id*., ¶ 98.   At the pleading stage, Lead Plaintiff faced significant uncertainty that it could prove loss causation given the Eleventh Circuit's express recognition of, but failure to address, whether factual allegations such as those here are sufficient to plead loss causation. *Id*., ¶99 n10.   *See Meyer v. Greene*, 710 F.3d 1189, 1201 n.13 (11th Cir. 2013).   Further, even if Lead Plaintiff survived Defendants' motion to dismiss, these issues would have been tested at both summary judgment and trial, and would have required significant expert testimony and analysis.   As in any securities class action, proof of damages would have been a disputed matter subject to conflicting expert testimony, and it would not be possible to predict with confidence how the court or a jury would resolve such a dispute.   *See, e.g.*, *Zuckerman v. Smart Choice Auto. Grp., Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

As the court held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *accord Behrens*, 118 F.R.D. at 540 (approving class action

---

[11]      The United States Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), and subsequent cases interpreting *Dura*, have made proving loss causation more difficult and uncertain.  *See, e.g.*, *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult."").   In *Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713, 725-26 (11th Cir. 2012), the Eleventh Circuit affirmed a lower court ruling that granted defendants' motion for judgment as a matter of law based on plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor.  *See also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants, holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-5), *aff'd*, 627 F.3d 276 (9th Cir. 2010).

settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *see also Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at \*12 ("At the time the Parties agreed to terms, there was great risk facing Plaintiffs and the Class that could have resulted in Plaintiffs and the Class recovering far less than the common fund created *vis-a-vis* the Settlement or, worse, nothing at all."); *Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Because of the risks associated with continuing to litigate and proceeding to trial, including obtaining class certification, there was a danger that Lead Plaintiff would not have prevailed against Defendants on any of its claims and that the Settlement Class would have received nothing.  Therefore, Lead Counsel believes that the Settlement obtained is in the best interests of the Settlement Class.

### 2.      The Settlement Amount Is Well Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'"  *Garst*, 1999 U.S. Dist. LEXIS 22666, at \*64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined'"); *accord Behrens*, 118 F.R.D. at 541.  "[T]he Court must determine 'whether [the settlement amount] falls within the "range of reasonableness," not whether it is the most favorable possible result in the litigation.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at \*68 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)).  As the Court in *Garst* observed:

> "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

1999 U.S. Dist. LEXIS 22666, at \*64-65; *accord Sunbeam*, 176 F. Supp. 2d at 1332; *Behrens*, 118 F.R.D. at 542.  Although Lead Counsel believes that the damages suffered by Settlement Class Members exceed the amount of the Settlement, the risk of continued litigation strongly militates in favor of approving the Settlement.

Here, the Settlement represents a very favorable result for the Settlement Class.  The Settlement Amount equates to approximately 12.4% of Lead Plaintiff's damages consultant's

estimate of the Settlement Class' likely maximum aggregate recoverable damages (i.e., $161 million).  Zivitz/Whitman Decl., ¶ 102.  Notably, the percentage of estimated maximum damages recovered here is at least *four times* greater than the percentage recoveries obtained in similar securities class action where alleged losses range from $125 million to $249 million.  *Id*.; *see also supra* n2.  This estimate, however, does not take into account any of Defendants' arguments to liability, scienter, loss causation or damages.  *Id*.  At trial, Defendants would be expected to argue that damages were truly zero, and, at a minimum, were far less than the $161 million figure.  As such, the percentage of damages the Settlement Amount represents could be viewed as even greater.  Moreover, courts have regularly approved other settlements in PSLRA cases recovering a comparable or smaller percentage of maximum damages.  *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, Case No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *9 (S.D. Fla. Oct. 14, 2016) (approving settlement representing 5.5% of the maximum damages and noting that the settlement is "an excellent recovery, returning more than triple the average settlement in cases of this size).[12]

Therefore, given the risks of proceeding with the Action, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" and this factor favors approval of the Settlement.  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

---

[12]    *See also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) (approving settlement representing approximately 6.25% of estimated damages and finding settlement to be "at the higher end of the range of reasonableness of recovery in class action securities litigations"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement yielding 6% of potential damages and finding settlement to be "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498, at *9 (D. Nev. Oct. 19, 2012) (approving settlement recovering approximately 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years).

### 3.   The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

The fourth *Bennett* factor, the complexity, expense and duration of litigation, also weighs in favor of the Settlement.  "A securities case, by its very nature, is a complex animal."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011); *see also In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The very nature of a securities fraud case demands a difficult level of proof to establish liability. Elements such as scienter, reliance, and materiality of representation are notoriously difficult to establish.").  As this Court is aware, in addition to the complexities of securities cases generally, this Action involved the intricacies of Bankrate's accounting practices and financial reporting, including the complexities of GAAP, and multiple groups of defendants.

In evaluating the Settlement, the Court should also consider "the significant burden this case would have imposed if it went to trial."  *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *10. Further litigation of this Action against Defendants would necessarily involve significant additional time and money.  If Lead Plaintiff survived Defendants' pending motion to dismiss, the parties would have proceeded to merits discovery which would have involved, among other things, voluminous document productions, serving and responding to requests for admission and interrogatories, depositions and, most likely, motions to compel.  Zivitz/Whitman Decl., ¶ 105.[13] Merits discovery would be followed by costly expert discovery, likely *Daubert* motions and summary judgment proceedings.  *Id.*, ¶ 106.  The parties would then begin preparing for trial — e.g., negotiating a pre-trial order, filing and opposing motions *in limine* and *Daubert* motions, drafting and opposing motions to bifurcate trial, proposing jury instructions, and submitting trial briefs. It is also likely that post trial appeals would have been filed.  *Id.*, ¶ 107.  In light of the costs and delays inherent in litigating this case to trial, the "unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of appellate activity if Lead Plaintiff was to prevail at trial – "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (approving class action settlement after finding that although the litigation prior to the settlement "was a costly undertaking for all parties

---

[13]      Given the nature of the accounting claims at issue here, it is likely that the Action would have also involved significant non-party discovery from Bankrate's auditor, Grant Thornton.  *Id.*

. . . [n]evertheless, further litigation would have resulted in considerable additional expense”); *Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at *14-15.

A settlement at this juncture results in a present, certain recovery without the considerable risk, expense, and delay of further litigation.  Therefore, this factor weighs in favor of approval of the Settlement.

### 4.    The Reaction of the Settlement Class to the Proposed Settlement to Date

The reaction of class members to a proposed settlement is a significant factor for courts to consider when assessing a proposed settlement. *See, e.g.*, *Ressler*, 822 F. Supp. at 1556; *Garst*, 1999 U.S. Dist. LEXIS 22666, at *71-72 (“small amount of opposition strongly supports approving the Settlement”).

To date, the Notice and Proof of Claim Form have been mailed to over 32,900 potential Settlement Class Members and nominees.  JND Aff., ¶ 11.  The Notice informed Settlement Class Members of their right to exclude themselves from the Settlement Class and their right to object to any aspect of the Settlement, Plan of Allocation, and/or Lead Counsel’s application for an award of attorneys’ fees and expenses.  Pursuant to the Preliminary Approval Order, and as set forth in the Notice, the deadline for Settlement Class Members to object or request exclusion is January 17, 2017.  To date, there have been no objections and no requests for exclusion from the Settlement Class.  Zivitz/Whitman Decl., ¶¶ 20, 112; JND Aff., ¶ 15.

### 5.    The Stage of Proceedings Supports Approval of the Settlement

The purpose of considering the sixth *Bennett* factor − the stage of the proceedings at which the settlement was achieved − is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement against further litigation. *Behrens*, 118 F.R.D. at 544.   In this respect, “[t]he Court considers the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating.”  *Gevaerts v. TD Bank, N.A.*, Case No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *19 (S.D. Fla. Nov. 5, 2015).  At the same time, “[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.”  *Ressler*, 822 F. Supp. at 1555; *see also Encarnacion v. J.W. Lee, Inc.*, Case Nos.: 14-CIV-61927-DIMITROULEAS & 15-CIV-61173-DIMITROULEAS, 2015 U.S. Dist.

LEXIS 144858, at *9 (S.D. Fla. Oct. 22, 2015) (approving settlement where "parties did not engage in formal discovery *per se*, [but where] Defendants made tens of thousands of pages of documents and computer records available to Plaintiffs and their expert forensic accountant for inspection as part of the mediation process [] and the settlement discussions that led to the parties' Settlement Agreement").

As detailed in the Zivitz/Whitman Declaration, this case has been zealously litigated since its filing in October 2014. Before reaching the Settlement, Lead Counsel had: (i) engaged in an extensive investigation into the Settlement Class' claims (including consulting with accounting professionals); (ii) briefed two rounds of motions to dismiss; (iii) sought leave to partially modify the discovery stay imposed by the PSLRA; (iv) moved for class certification; (v) worked extensively with loss causation and damages consultants in connection with class certification and mediation; (vi) participated in formal mediation with the assistance of an experienced impartial mediator, including an all-day, in-person mediation session; and (vii) reviewed and analyzed more than 307,000 pages of documents produced by Defendants in connection with Settlement. *See generally* Zivitz/Whitman Declaration. Accordingly, Lead Plaintiff and Lead Counsel believe that they had a sufficient understanding of the facts of the case, including its strengths and weaknesses, when negotiating the Settlement such that this factor favors approval of the Settlement. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### D. The Recommendation of Experienced Counsel Favors Approval of the Settlement

The Court is entitled to rely on the judgment of counsel, and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Behrens*, 118 F.R.D. at 539; *accord Smith*, 926 F.2d at 1028; *Strube*, 226 F.R.D. at 703. Lead Counsel strongly endorses the Settlement. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." 226 F.R.D. at 703.

For all of the foregoing reasons, the Court should find that the Settlement is fair, adequate and reasonable, and in Settlement Class Members' best interests.

15

IV.     **THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

Following approval of the Settlement and upon entry of an Order approving distribution, the Net Settlement Fund will be distributed to Authorized Claimants.  The proposed Plan of Allocation (the "Plan") contained in the Notice details the manner in which the Net Settlement Fund will be allocated.  *See* JND Aff., Ex. A (Appendix A).

Approval of a plan of allocation is governed by the same standards for approving a class action settlement – it must be "fair, adequate and reasonable" and "not the product of collusion between the parties."  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rationale basis."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).  Moreover, it is appropriate for plans of allocation in securities class actions to distribute settlement proceeds based on an assessment of the relative strengths and weaknesses of class members' claims.  *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (approving plan of allocation that "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strength and value of different categories of claims.").

Here, Lead Counsel prepared the Plan after careful consideration and with the assistance of Lead Plaintiff's damages consultant.  Zivitz/Whitman Decl., ¶ 114.  The Plan incorporates a thorough analysis of the price movement in Bankrate common stock following the alleged partial corrective disclosures on September 15, 2014 and October 9, 2014 and is generally consistent with the damages that Lead Plaintiff and its counsel believe were recoverable in the Action.  *Id.*

Under the Plan, a Recognized Loss Amount will be calculated for each share of Bankrate common stock purchased or otherwise acquired during the Settlement Class Period (i.e., October 27, 2011 through October 9, 2014, inclusive) that is listed in a Settlement Class Member's Proof of Claim Form and for which adequate documentation is provided.  *Id.*, ¶ 115.  The calculation of a Recognized Loss Amount (and ultimately, a claimant's "Recognized Claim") will depend upon when the claimant's shares of Bankrate common stock were purchased, acquired or sold.  *Id.*, ¶ 117.  Pursuant to the Plan, Settlement Class Members may have a claim under Section 11 of the Securities Act (for shares purchased or acquired pursuant to Bankrate's March 4, 2014

Offering documents) and/or Section 10(b) of the Exchange Act.  Zivitz/Whitman Decl., ¶ 115.[14]
In order to have a loss under the Exchange Act, the Bankrate common stock purchased or
acquired during the Settlement Class Period must have been held through at least one of the
alleged corrective disclosures.  *Id.*, ¶ 116.[15]  The Claims Administrator for the Settlement, JND,
will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund by
dividing the Authorized Claimant's Recognized Claim (i.e., the sum of a claimant's Recognized
Loss Amounts as calculated in accordance with the Plan) by the total Recognized Claims of all
Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *Id.*, 117; *see
also* JND Aff., Ex. A (Appendix A).

The Plan was fully disclosed in the Notice mailed to potential Settlement Class Members
and nominees.  To date, there have been no objections to the Plan.  Zivitz/Whitman Decl., ¶ 113.
Accordingly, Lead Counsel believes that the Plan is fair and reasonable and should be approved.

## V.      NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class
action] shall be given to all members of the class in such manner as the court directs."  *See Juris
v. Inamed Corp.*, 685 F.3d 1294, 1307 n.10 (11th Cir. 2012).  Moreover, the notice should be
"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency
of the action and afford them an opportunity to present their objections."  *Saccoccio*, 297 F.R.D.
at 691.  The notice program utilized here, as set forth in the Court's Preliminary Approval Order,
easily meets this standard.

---

[14]      If a claimant has a claim under both the Securities Act and the Exchange Act for the same
transaction, that claim will be calculated under the section of the Plan which yields the largest
loss.  *Id*.

[15]      The calculation of a claim under the Exchange Act also takes into account the PSLRA's
statutory limitation on recoverable damages.  *See* 15 U.S.C. § 78u-4(e).  *Id.*, ¶ 116.  The Plan
also takes into account the Court's November 23, 2015 Order granting Defendants' motions to
dismiss the AC and dismissing all claims and, in particular, the claims based upon the allegedly
false and misleading statements made from October 27, 2011 through July 31, 2012, which were
not included in SAC.  Because of the Court's dismissal of these claims, and the fact that such
claims were not included in the SAC at the time that the parties agreed to settle the Action, such
claims could not have been pursued at a trial of the Action, and could only have been further
pursued in a post-trial appeal.  Accordingly, "Recognized Loss Amounts" resulting from
purchases/acquisitions made during the period from October 27, 2011 through July 31, 2012,
shall be multiplied by ten percent (10%) to reflect the substantially decreased likelihood of
obtaining any recovery on these dismissed claims.  *See* JND Aff., Ex. A (Appendix A).

The notice program was carried out by the Court-authorized Claims Administrator, JND, under the supervision of Lead Counsel. *See generally* JND Affidavit. As noted above, in accordance with the Preliminary Approval Order, as of December 28, 2016, JND has mailed over 32,900 copies of the Notice and Proof of Claim Form via First-Class Mail to potential members of the Settlement Class and nominees. JND Aff., ¶ 11. JND also caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*. *Id.*, ¶ 12. In addition, a dedicated toll-free telephone number and website, www.BankrateSettlement.com, were established to assist potential Settlement Class Members with inquiries regarding the Action, the Settlement and the claims process. *Id.*, ¶¶ 13-14.

The Notice contains the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class conditionally certified by the Court; (iii) a description of the basic terms of the Settlement, including the amount of the consideration and the releases to be given; (iv) the Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and costs that will be sought; (vii) a description of Settlement Class Members' right to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation, and/or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members.[16]   The Notice also provides

---

[16]     The PSLRA also requires the notice of settlement to include: (1) "[t]he *amount* of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title . . . , a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7). The Notice includes all of the information required by the PSLRA.

recipients with information on how to submit a Proof of Claim Form in order to be potentially eligible to receive a distribution from the Net Settlement Fund.  *See* JND Aff., Ex. A.[17]

To date, Lead Plaintiff has satisfied all of the elements of the notice plan approved by the Court. *See generally* JND Affidavit; Zivitz/Whitman Decl., ¶¶ 120-125.  Accordingly, the notice program implemented in this Action constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Federal Rule of Civil Procedure 23, and the PSLRA.  *See* Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Almanzar v. Select Portfolio Servicing, Inc.*, Case No. 1:14-cv-22586-FAM, 2016 U.S. Dist. LEXIS 40457, at *7-8 (S.D. Fla. Mar. 25, 2016); *Braynen*, 2015 U.S. Dist. LEXIS 151744, at *17-18.

## VI.   CONCLUSION

For the reasons stated herein and in the Zivitz/Whitman Declaration, Lead Plaintiff respectfully requests that the Court: (i) finally certify the Settlement Class for purposes of effectuating the Settlement; (ii) finally approve the proposed Settlement as fair, reasonable, and adequate and enter the proposed Judgment; and (iii) approve the Plan of Allocation.  Proposed orders will be submitted with Lead Plaintiff's reply papers, which Lead Plaintiff will file after the January 17, 2017 deadline for seeking exclusion from the Settlement Class and objecting to the Settlement has passed.

Dated: December 30, 2016              Respectfully submitted,

/s/ *Lester Hooker*
Lester Hooker
Florida Bar No. 32242
lhooker@saxenawhite.com
Joseph E. White
Florida Bar No. 0621064
jwhite@saxenawhite.com
SAXENA WHITE P.A.
Boca Center, 5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Ph: (561) 394-3399

*Liaison Counsel for the Settlement Class*

---

[17]      *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (holding that notice must contain "an adequate description of the proceedings written in objective, neutral terms, that . . . may be understood by the average absentee class member"); *see also Saccoccio*, 297 F.R.D. at 691.

Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
jwhitman@ktmc.com
Andrew L. Zivitz (admitted *pro hac vice*)
azivitz@ktmc.com
Kimberly A. Justice (admitted *pro hac vice*)
kjustice@ktmc.com
KESSLER TOPAZ
MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Ph: (610) 667-7706

-and-

Jennifer L. Joost (admitted *pro hac vice*)
jjoost@ktmc.com
1 Sansome Street, Suite 1850
San Francisco, CA 94109
Ph: (415) 400-3000

*Counsel for Lead Plaintiff The City of Los Angeles, Acting Through its Fire and Police Pension System, Acting by Order of and Through its Board of Fire and Police Pension Commissioners, and Lead Counsel for the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

I certify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 30, 2016.

*/s/Lester R. Hooker*
Lester R. Hooker